Thomas H. DENNEY, Appellant,

v.

Roy M. TEEL, an Individual, Roy M. Teel Company, Inc., d/b/a HJF, Inc., Appellees.

No. 58870.

Supreme Court of Oklahoma.

Sept. 25, 1984.

---

24. *Bruce v. Miller,* supra note 11 at 511–512.

Earl W. Arnold, Tulsa, for appellant.

James R. Eagleton, Todd Maxwell Henshaw, Houston & Klein, Tulsa, for appellees.

OPALA, Justice.

The issues presented on certiorari are: [1] In an action for breach of contract involving royalty interests to be conveyed from future oil-and-gas leases in Kentucky, is "royalty" a real property interest governed by the law of the situs? [2] If law of the situs governs, will full performance by one party take the oral contract out of the Kentucky Statute of Frauds? and if the second question be answered in the affirmative, [3] Will Kentucky's Rule Against Perpetuities operate as a bar to the enforcement of the contract?

We hold that: (a) royalty to be derived from future leases is an interest in land, and a contract involving such royalty is governed by the law of the situs; (b) full performance under the contract by one party, where no reciprocal performance within a year was contemplated, takes the oral contract out of the Kentucky Statute of Frauds; and (c) application of Kentucky's Rule Against Perpetuities, as revised, will not invalidate royalty contracts contingent on future oil-and-gas leases.

Thomas H. Denney [Denney] commenced an action for breach of an alleged oral contract by which he was to receive, in exchange for specific information and documentation on certain mineral leases in Wayne County, Kentucky, a one-percent (1%) overriding royalty in all mineral leases to be obtained in that county by defendants Roy M. Teel et al. [Teel]. The alleged contract was entered into in Oklahoma, where the parties resided and where Denney also supplied the requested information and materials. A letter, signed by Teel and prepared in his offices in Tulsa, Oklahoma, allegedly memorialized the agreement. Denney argued that the letter (which assigned to him one-percent overriding royalty interest in specified leases) constituted only partial performance on Teel's part, and that Denney was to receive overriding royalty on future Wayne County leases as well. In his deposition Teel denied any agreement whatsoever, and stated that the specific written assignment constituted his voluntary disposition of Denney's entire asserted royalty claims to the Wayne County leases. In the breach-of-contract action, Denney alleged complete performance on his part and part performance on Teel's part. He sought assignment of one-percent overriding royalty on all future Wayne County leases for specific performance of the alleged contract. As an alternative theory of recovery, he sought judgment in quantum meruit for the reasonable value of his services.

The trial court granted summary judgment for the defendants, ruling that: (1) the action involved an interest in real estate, necessitating resort to Kentucky law; (2) the alleged oral contract was barred by the Kentucky Statute of Frauds, and (3) the agreement was void under the Kentucky Rule Against Perpetuities. Implicit in its summary judgment is the trial court's denial of Denney's alternative theory of recovery.

The Court of Appeals affirmed the judgment of the trial court, holding that: (1) Kentucky law was applicable because in Oklahoma royalty interests are treated as interests in real property and would be governed by the law of the situs rather than general Oklahoma contract law; and (2) Kentucky law provides that an agreement not to be performed within one year must be in writing and partial performance is insufficient to take the contract out of the statute. Because the Court of Appeals found the alleged Denney/Teel agreement unenforceable under the Kentucky Statute of Frauds, it did not deal with the Kentucky Rule Against Perpetuities.

We granted certiorari on Denney's petition and now vacate the Court of Appeals opinion, reverse the summary judgment and remand the cause to the trial court for further proceedings not inconsistent with this pronouncement.

I

## DISPUTES CONCERNING UNACCRUED ROYALTY ARE GOVERNED BY THE LAW OF THE SITUS

Denney insists that general principles of Oklahoma contract law should be applied

rather than the law of the situs. He argues that royalty, as an interest in real estate, is only incidental to the making of this particular contract.

 To determine which law governs, it is necessary to examine the term "royalty" as applied to the disputed contract. "Royalty" reduced to possession is to be distinguished from "unaccrued royalty" as an interest in unpossessed oil in the ground. The former assumes the character of personalty; the latter is classed as real estate.[1] While neither the trial court nor the court of appeals specifically distinguished between these types of royalty interests, we believe that royalty in this instance should be treated as real property because it falls within the second category. This analysis accords with prior decisions of this court.[2] Disputes concerning interests in real property are properly governed by the law of the state where the land is located.[3]

II

## THE STATUTE OF FRAUDS AND ITS APPLICATION IN KENTUCKY

 The Kentucky Statute of Frauds would at first blush appear to prevent re-

1. Annot., 90 A.L.R. 770 et seq. [1934]; Annot., 101 A.L.R. 884 et seq. [1936]; Annot., 131 A.L.R. 1371 et seq. [1941].

2. *In Estate of Shelton v. Oklahoma Tax Commission*, Okl., 544 P.2d 495, 497–498 [1975] we said that headrights—the right to participate in the distribution of mineral royalties—are not personal property because they have not been reduced to possession. *In Re Shailer's Estate*, Okl., 266 P.2d 613, 616 [1954] notes that the reservation of all royalties from oil and gas and other minerals (as to unaccrued royalties) is usually treated as real property. *McCully v. McCully*, 184 Okl. 264, 86 P.2d 786, 788 [1939], states that unaccrued royalty is real and not personal property.

The Restatement (Second) of Conflicts of Laws § 189 [1971] is in accord with these decisions: "The validity of a contract for the transfer of an interest in land and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the land is situated unless, with respect to the particular issue, some other state has a more significant relationship under the

principles stated in § 6 [of the Restatement] to the transaction and the parties, in which event the local law of the other state will be applied." Comment c notes that "[t]he state where land is situated will have a natural interest in transactions affecting it, particularly in view of the fact that land by its nature is immovable".

3. *Sunderland v. U.S.*, 266 U.S. 226, 232–233, 45 S.Ct. 64, 67, 69 L.Ed. 259 [1924]; *Mashunkashey v. Mashunkashey*, 191 Okl. 501, 134 P.2d 976, 977 [1942].

The enforceability of an oral contract conferring an interest in real property is governed by the law of the situs. Because the statute of frauds makes certain oral contracts for transfer of real property unenforceable, it is regarded, in a conflict-of-analysis, as one of substantive law. See Restatement (Second) of Conflicts of Laws § 141 [1971], comment b; Lorenzen, The Statute of Frauds and the Conflict of Laws, 32 Yale L.J. 311, 324–326 [1923]; 2 Corbin, Contracts § 294 [1950]. The law of the situs determines the validity and enforceability of the contract so far as it may be affected by the statute of frauds. *Hotel Woodward Co. v. Ford Motor Co.*, 258 F.

covery on the contract here alleged.[4] While Kentucky does not subscribe to the doctrine of part performance, it does recognize another exception. Where one party has fully performed and the other party has more than one year in which to perform his part, the statute will not prevent recovery.[5]

■ Denney claims to have rendered full performance by supplying the requested information and materials. Although it is doubtful that all future leases to be obtained by Teel in Wayne County, Kentucky, could be executed within one year from time of contracting, the case does fall within the exception to Kentucky's Statute of Frauds. Denney should hence be given the opportunity to prove his case on its merits.

## III

## THE RULE AGAINST PERPETUITIES AND ITS APPLICATION IN KENTUCKY

Inasmuch as the disputed contract does fall within the exception to Kentucky's Statute of Frauds, the question remains whether the agreement is contrary to Kentucky's Rule Against Perpetuities.[6]

■ The rule against perpetuities is one of property law which precludes the postponement of vesting of contingent interests for a period of time considered to be too long.[7] The classical common-law period of "lives in being plus 21 years" is the period of perpetuities in Kentucky.[8]

Teel argues that since the evidence shows that the agreement provided for no time limit on the oil-and-gas leases that he might acquire in the future,[9] Denney's interest does not necessarily vest within the Kentucky period of perpetuities. Denney contends that by the very terms of the agreement, the rule would not be violated. He asserts that the contract pertains only to leases obtained by Teel and that since his is the life in being which measures the time of vesting of rights under the contract, there could be no violation of the rule.

From Denney's deposition, it is clear that he considered the agreement to be one

322, 326–327 [2nd Cir.1919]; *Colden v. Alexander*, 141 Tex. 134, 171 S.W.2d 328, 335 [1943]. The rule against perpetuities is a substantive rule of property law. Whether a contract violates this rule must be determined by the law of the situs. *Miller v. Douglass*, 192 Wis. 486, 213 N.W. 320, 325 [1927]; *Isen v. Giant Food, Inc.*, 295 F.2d 136, 137 [D.C.Cir.1961].

4. Kentucky Revised Statute, 371.010 [1979], provides in part:
"371.010 Statute of frauds; contracts to be written.
No action shall be brought to charge any person: * * *
(6) Upon any contract for the sale of real estate, or any lease thereof for longer than one year;
(7) Upon any agreement that is not to be performed within one year from the making thereof; or
(8) Upon any promise, agreement, or contract for any commission or compensation for the sale or lease of any real estate or for assisting another in the sale or lease of any real estate; unless the promise, contract, agreement, representation, assurance or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent. The consideration need not be expressed in the writing, but it may

be proved when necessary or disproved by parol or other evidence."

5. *Head v. Schwartz' Ex'r.*, 304 Ky. 798, 202 S.W.2d 623, 624–625 [1947]; *Maloney v. Maloney*, 258 Ky. 567, 80 S.W.2d 611, 613–614 [1935]; *Pilcher v. Stadler*, 276 Ky. 450, 124 S.W.2d 475, 479 [1939]. The result reached in these decisions also comports with the general rule stated in Annot., 6 A.L.R.2d 1146 et seq. [1949].

6. Ky.Rev.Stat. 381.215 and 381.216, infra note 10.

7. *Letcher's Trustee v. Letcher*, 302 Ky. 448, 194 S.W.2d 984, 988 [1946]; see also Kuntz, The Rule Against Perpetuities and Mineral Interests, 8 Okl.L.Rev. 183, 184 [1955]; *Producers Oil Company v. Gore*, Okl., 610 P.2d 772, 774 [1977].

8. Ky.Rev.Stat. 381.215, infra note 10.

9. The evidence referred to is from Denney's deposition. He was asked whether the agreement to assign royalties applied to all future leases that Teel acquired in Wayne County. Denney stated that whether the leases were acquired at the present time or a "thousand years from now", he would be entitled to an override royalty.

made with Teel and his companies and that he expected those business entities to honor the agreement should Teel be deceased. We must therefore look to the Kentucky rule against perpetuities to ascertain whether it operates to invalidate the contract.

## A. *Kentucky's New Rule Against Perpetuities*

▬▬▬ Kentucky reformed its perpetuities law in 1960.[10] Interpretations of the old statute, enacted in 1852, had resulted in much confusion. The rule was criticized for its nightmarish intricacies and harsh consequences.[11] One aspect of the old rule, the "remote possibilities test", was eliminated by the new statute. Under this test *any possibility* (at the creation of the interest) that a future interest may not vest within the limits of the rule was held fatal to its validity. Criticism of the old rule targeted on the requirement of absolute certainty that the interest would vest in due time. The possibilities concept was supplanted in 1960 by a "wait-and-see" approach by which contingent future inter-

ests are to be measured by *actual* instead of possible events.[12] The new statute also provided for reformation of invalid interests by *cy pres*.[13] If the contingency upon which the interest is limited actually occurs within the period of the rule, the interest is valid; if not, it is void.[14] Rationale for this new concept centers on relieving the harshness of prior law and on allowing unfettered transfer of commercial interests in land.[15]

▬▬▬ Contingent events not causally related to any life in being, as well as events bearing causal connection with the measuring life, are affected by the new statute.[16] Should the event not be causally related to the continuance of any life in being, the interests are valid if the contingencies occur within twenty-one years.[17] The contingency in the case at bar is the execution of future oil and gas leases in Wayne County, Kentucky, by Teel or his companies.

▬▬▬ Kentucky cases decided after the 1960 amendment of Ky.Rev.Stats. 380.215 and 380.216 are few,[18] but the trend is

---

10. Kentucky Revised Statutes, 381.215 and 381.216 [1979], provide:

"381.215 Adoption of common law rule against perpetuities.

No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest. It is the purpose of this section to enact the common law rule against perpetuities, except as hereinafter modified by K.R.S. 381.215 to 381.223."

"381.216 Wait-and-see doctrine; reformation.

In determining whether an interest would violate the rule against perpetuities the period of perpetuities shall be measured by actual rather than possible events; provided, however, the period shall not be measured by any lives whose continuance does not have a causal relationship to the vesting or failure of the interest. Any interest which would violate said rule as thus modified shall be reformed, within the limits of that rule, to approximate most closely the intention of the creator of the interest."

11. Dukeminier, Kentucky Perpetuities Law Restated and Reformed, 49 Ky.L.J. 3 [1960]. A study by the author disclosed that in more than half of three dozen cases holding interests void, the court knew at the time of decision that the interest would in fact vest within the period.

Nonetheless, the rule against perpetuities required the interest be struck down because some remote event might have happened, although in fact it did not.

12. Ky.Rev.Stat. 381.216.

13. Ky.Rev.Stat. 381.216. The adoption of *cy pres* requires the court to reform the invalid interest only, leaving standing the preceding valid estates, which under prior law were frequently struck down through the application of infectious invalidity. Dukeminier, supra note 11 at 65.

14. Dukeminier, supra note 11 at 61.

15. *Three Rivers Rock Co. v. Reed Crushed Stone. Co.*, 530 S.W.2d 202, 205 [Ky. 1975].

16. Dukeminier, supra note 11 at 63–64.

17. Dukeminier, supra note 11 at 63–64.

18. *Gilbert v. Union College*, 343 S.W.2d 829, 830–831 [Ky.1961]; *Three Rivers Rock Co. v. Reed Crushed Stone Co.*, supra note 15. *Gilbert*, supra, involved the application of the 1960 Act to options to purchase property. There, the court held that such options did not violate the rule.

clear. It indicates simplification of the rule and substitution of the more relaxed version of "wait and see" to validate contingencies actually occurring within the period of the rule. Because the execution of future oil-and-gas leases is a contingent future event which would be entitled to the benefit of the wait-and-see doctrine, Denney's interest in those leases would not be rendered invalid until vesting is shown to have occurred beyond the perpetuities period.

## B. *Non-participating Royalty Interests*

While our research does not reveal that Kentucky has entertained the issue of whether a non-participating royalty interest is even subject to the rule against perpetuities—an issue that is not addressed here since we have determined that the rule does not operate to avoid the specific interest in suit—we make some general observations about the nature of that particular interest.

Non-participating royalty,[19] being separate from the power to lease, has been analogized to the incorporeal hereditament of common-law rent.[20] Such "rent" could be granted alone and measured by later mineral production, with all rights of ownership (including power to lease) remaining in the grantor. Since royalty is inherently subject to another's power to lease, it would not, under one theory, be subject to the rule against perpetuities.[21]

Problems in applying the rule center mainly on the remoteness of vesting.[22] Under the theory that non-participating royalty is a presently vested incorporeal hereditament, payment contingent on the execution of leases should not offend the rule.[23] A non-participating royalty interest is, in essence, a non-executive right or purely passive right to receive income from development of the minerals.

---

The court noted that the 1960 Act substituted actual events as the test for determining the validity of an interest rather than the "... metaphysical possibilities doctrine which dreamed up the 'fertile octogenarian', the 'unborn widow' and other possibilities as just reasons for invalidating interests in property ..." 343 S.W.2d at 830. Following the lead of *Gilbert*, the court in *Three Rivers*, supra note 15, noted that Kentucky differentiates between the common-law rule against restraint on alienation (designed to prevent owners from losing their power to alienate property) and the rule against perpetuities (designed to prevent interests from being created in the far distant future). The court, observing that the 1960 rule against perpetuities governed the option in suit (for sale and purchase of easement and right-of-way), held that the interest was entitled to the benefit of the new wait-and-see doctrine. Another case, *Mounts v. Roberts*, 388 S.W.2d 117, 119 [Ky. 1965], decided after enactment of the statute, interpreted a deed executed in 1904, and made no mention of the new statute. Apparently applying the old statute, the court held that a deed conveying a life estate in mineral rights to the wife, then to the children for life, and finally to the children's heirs, violated the Kentucky rule against perpetuities.

**19.** In Kuntz, supra note 7 at 189, it is explained that the term "non-participating royalty interest" came about because for many years it had been assumed that the holder of the pure royalty interest had no leasing power and need not be joined as a party to subsequent leases.

**20.** Kuntz, supra note 7 at 194.

**21.** Kuntz, supra note 7 at 194.

**22.** The general rule is, if the royalty is considered real property, its conveyance is considered present vesting of an immediate interest; but if personal, the interest will not vest until time of actual oil-and-gas production. Annot., 46 A.L.R.2d 1268 et seq. [1956].

**23.** A persuasive argument is propounded in Meyers, The Effect of the Rule Against Perpetuities in Perpetual Non-Participating Royalty and Kindred Interests, 32 Tex.L.Rev. 369 et seq. [1954]. The article gave reasons why royalty payments contingent on execution of leases would not offend the rule: (1) royalty created by long-term oil and gas leases do not offend the rule, although subject to the same contingency—discovery and production of oil and gas; (2) common-law rent (share of crops) in a long-term lease does not offend the rule, although production and harvesting of the crops is uncertain; (3) a non-executive interest is a present interest, not created by execution of a lease; (4) if royalty is analogous to common-law rent, it could be regarded as a real covenant in aid of rent. Since rent is a present, continuing interest and the covenants only involve payment of money, the rule is not offended. See Meyers, supra, at 411-415.

Since any interference with the surface occurs with the creation of a mineral estate, and not with the creation of a non-executive interest, there appears to be no basis to prevent separation of the executive from a non-executive oil-and-gas interest.[24]

The rule against perpetuities sprang from a public policy of freeing land from the stranglehold of perpetual family settlements. Since modern commercial transactions do not offend this policy, but actually encourage full utilization of land, support has diminished for a continued adherence to a rigid application of the rule.[25] Whether in Kentucky perpetual non-participating royalty interests would not be subject to the rule is an issue for the Kentucky courts.[26]

In summary, since this case appears to fall within an exception to the Kentucky Statute of Frauds and enforcement of the alleged contract is not barred by the Kentucky Rule Against Perpetuities, summary judgment was improperly granted. In

view of our disposition, it is unnecessary to discuss the trial judge's implicit denial of quantum meruit as Denney's alternative theory of recovery.

The Court of Appeals opinion is vacated, the trial court's judgment is reversed and the cause is remanded for further proceedings not inconsistent with this pronouncement.

BARNES, C.J., LAVENDER, HARGRAVE and WILSON, JJ., and BOX and POWERS, S.JJ., concur.

SIMMS, V.C.J., and HODGES, J., dissent.

24. Meyers, supra note 23 at 423.

25. Meyers, supra note 23 at 416, 425.

26. In *Maynard v. Ratliff,* 297 Ky. 127, 179 S.W.2d 200, 202 [1944], a case in which the court had under consideration perpetual non-participating royalty interests, the court gave recognition to this interest without any discussion of the rule against perpetuities. Whether this decision can be cited as authority for the position that the Kentucky court assumed that perpetual non-participating royalty interests are not subject to the rule, we need not decide here.